# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 08-3077

Jonathan D. Fithian, Appellant,

v.

Eric K. Shinseki,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued July 13, 2010                                          Decided November 9, 2010)

*David L. Allred*, of Bethesda, Maryland, was on the application for the appellant.

*Pamela M. Nash*, with whom *Richard Mayerick*, Deputy Assistant General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Will A. Gunn*, General Counsel, were on the response, all of Washington, D.C., for the appellee.

Before GREENE, LANCE, and DAVIS, *Judges*.

DAVIS, *Judge*: U.S. Army National Guard veteran Jonathan D. Fithian appeals through counsel from a May 15, 2008, Board of Veterans' Appeals (Board) decision that denied his claim for VA benefits. On September 25, 2008, the Court received from Mr. Fithian a Notice of Appeal (NOA), which was more than 120 days after the May 15, 2008, Board decision and therefore would be an untimely NOA. *See* 38 U.S.C. § 7266(a) (establishing that a person adversely affected by a Board decision shall file an NOA with the Court within 120 days after the date the Board decision is mailed).

Because a VA regional office (RO) received from Mr. Fithian a letter constructively filed with the Board which constitutes a motion for reconsideration of the May 15, 2008, Board decision; and because that letter was received within the statutory appeal period for filing an appeal of a Board decision to the Court; and because the motion for reconsideration is still pending at the Board, the

Court lacks jurisdiction to hear the appeal. The Court will therefore dismiss the appeal without prejudice.

## I. FACTUAL BACKGROUND

In response to an order to show cause why the September 25, 2008, NOA should not be dismissed, Mr. Fithian asserts that on July 21, 2008, he mailed a letter to the Board that constitutes a motion for reconsideration. The letter reads:

> July 21, 2008
> Board of Veterans' Appeals
> Notice of Disagreement
> To Whom It May Concern:
> My name is Jonathan D Fithian [redacted] am writing this day to disagree with your decision on my compensation claim on my left leg and ankle. I'm not sure if there was some kind of misunderstanding during my doctor visits, but the pain in my lower left [sic] has continued to bother and hamper me ever since I [was] injured during train-ups for OIF. I injured it again while in country and to this day have to take pain medicine in order for me to sleep at night. I might be able to do might daily duties but that is because I have become immune to the pain.
> Thanks for your time and understanding,
> [signature]
> Jonathan D Fithian

Appellant's October 31, 2008, Response at 2. There is no indication in the record that the Board received the July 21, 2008, letter, and Mr. Fithian received no communication from the Board in response to the letter.

On September 8, 2008, the Nashville, Tennessee, RO received from Mr. Fithian a copy of his July 21, 2008, letter, a letter from his wife providing a statement supporting his claim, and two copies of a completed VA Form 9 (Substantive Appeal to the Board). The Nashville RO received the letter within the 120-day period for filing either an NOA with the Court or a motion for reconsideration with the Board[1]and the RO returned the materials to Mr. Fithian on September 12, 2008. The RO also enclosed a letter that stated: "[W]e cannot take any action on your

---

[1] According to 38 C.F.R. § 20.1001(b) (2010), a motion for reconsideration of a Board decision may be filed by the appellant at any time. The Court, in stating that the September 8, 2008, letter was filed within the 120 days for filing a motion for reconsideration with the Board, is referencing the *Rosler* period during which the start of the 120-day period to file an NOA can be postponed. *See infra*.

correspondence. If you would like to appeal the [Board] decision, your appeal rights concerning that determination are explained in the [form] you received with the [Board's] decision letter. We have enclosed another copy for your convenience." Appellee's December 10, 2009, Response at Exhibit 3.

## II. ARGUMENTS AND ISSUES

Mr. Fithian argues that his July 21, 2008, letter to the Board filed within the 120 days of the mailing of the Board decision under 38 U.S.C. § 7266 was a timely filed motion for reconsideration, which prevented the period to file an NOA from beginning.[2] Alternatively, he argues that his September 8, 2008, letter to the RO was a timely filed motion for reconsideration, which prevented the time period to file an NOA from beginning. *See* 38 C.F.R. § 20.1001 (2010) (establishing the criteria for a motion for reconsideration). He further argues because he timely filed a motion for reconsideration, the 120-day period to file an NOA with the Court only began after the RO returned the motion for reconsideration to him on September 12, 2008, and therefore his NOA was timely filed with the Court, and his appeal is properly before the Court.

The Secretary, in response, argues that the Board did not receive the document Mr. Fithian states he mailed on July 21, 2008, and the presumption of regularity does not apply to the appellant's mailing of a letter to the Board, but only applies to Government actors. The Secretary further contends that the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit's) decision in *Henderson v. Shinseki,* 589 F.3d 1201 (Fed. Cir. 2009) (en banc), *cert. granted*, 130 S. Ct. 3502 (2010), overruled *Jaquay v. Principi,* 304 F.3d 1276 (Fed. Cir. 2002) (en banc), and consequently a motion for reconsideration misfiled at the RO is not constructively filed at the Board. Therefore, the Secretary asserts, the appellant did not file a timely motion for reconsideration that is capable of postponing the start of the period to file an NOA. Finally, the Secretary argues that the only question properly before the Court is whether the NOA is timely, and that if the Court determines the NOA

---

[2] The parties used the term "toll" in their briefs and arguments to the Court, but we instead use "begin." In an effort at clarity and consistency, as discussed *infra*, the Court has rephrased the arguments to omit the word "toll" and "tolling."

is untimely, the Court does not have jurisdiction to determine whether the letter to the RO is a motion for reconsideration rather than an NOA, but must simply dismiss the case.

Two issues are presently before the Court. First, whether in light of the Federal Circuit's recent decision in *Henderson*, filing a motion for reconsideration at the RO–or anywhere within VA–is the same as filing a motion for reconsideration at the Board. Second, whether in determining the timeliness of an NOA, the Court has jurisdiction to determine whether a document is an NOA or a motion for reconsideration under 38 C.F.R. § 20.1001.

The Court holds that neither *Henderson* nor *Bowles v. Russell* overrules *Jaquay*'s veteran-friendly determination that a timely misfiling of a motion for reconsideration at the RO–or anywhere within VA–is a constructive filing of the motion for reconsideration at the Board. *See Bowles,* 551 U.S. 205 (2007). The Court further holds that, in deciding whether an NOA is timely, the Court has jurisdiction to identify what that document is under 38 C.F.R. § 20.1001.

### III. ANALYSIS

Critical to an understanding of the jurisprudence in this area is a recognition that a motion for reconsideration suspends or abates any earlier final decision by the Board when it is filed within the 120-day statutory period to appeal the Board decision to the Court. *See Rosler v. Derwinski,* 1 Vet.App. 241 (1991). That is, a Board decision is no longer final once a motion for reconsideration is filed. *See Rickett v. Shinseki,* 23 Vet.App. 366, 371 (2010) (stating that, when a motion for reconsideration is filed within 120 days of a final Board decision, "finality does not attach until the Board Chairman renders a decision denying the motion for reconsideration"); *see also Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs,* 107 S. Ct. 2360, 2368-39 (1987). Once a motion for reconsideration has been filed, the Board decision only becomes final when the Chairman has acted on the motion for reconsideration. *See Rickett, supra.* The Court cannot review the case on the merits unless and until final Agency action has been taken. *Id.*; *see also Civil Aeronautics Bd. v. Delta Airlines, Inc.,* 81 S. Ct. 1611, 1619 (1961).

Before proceeding, we will clarify the distinction between the terms "abatement" and "equitable tolling." Equitable tolling of the period to file an appeal under 38 U.S.C. § 7266(a) and abatement of a final administrative decision are overlapping legal doctrines, but are nonetheless

4

distinct. Equitable tolling is the doctrine that "the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." BLACK'S LAW DICTIONARY 560 (7th ed. 1999). It is an equitable remedy where "extraordinary circumstances prevented the plaintiff from filing despite his or her diligence" or where "the plaintiff actively pursued his or her judicial remedies by filing a defective pleading during the statutory period." AMERICAN JURISPRUDENCE 563 (2nd ed. 2000). Abatement, on the other hand, is "[t]he act of eliminating or nullifying" or "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." BLACK'S LAW DICTIONARY 2 (7th ed. 1999). It "may also mean the complete extinguishment of a cause of action" and can be "the equivalent of a dismissal." AMERICAN JURISPRUDENCE 84 (2nd ed. 2000).

According to this Court's decision in *Rosler*, when the appellant has filed a motion for reconsideration with the Board within 120 days after the mailing date of the Board decision, the finality of that Board decision is abated and the 120-day statutory appeal period to the Court does not begin until after the Board Chairman has denied the reconsideration motion. *See id.* at 249. Therefore, the doctrine set forth in *Rosler* resets the start of the statutory appeal period once final Agency action has been taken. Thus, "[t]he doctrine set forth in *Rosler* does not toll any limitations period," but resets the start of the statutory appeal period once final action has been taken by the Board. *Jaquay,* 304 F.3d at 1281 n.2. "Instead of temporarily halting the appeals period," as the term "tolling" is generally used, "the *Rosler* rule resets the appeal period" or holds the appeals period in abeyance until final action is taken by the Board. *Id.* Consequently, a motion for reconsideration does not directly impact this Court's statutory jurisdiction under 38 U.S.C. § 7266 because the 120-day statutory appeal period to the Court does not begin to run until final Agency action is taken. *See* 38 U.S.C. § 7266(a) ("In order to obtain review by the Court of Appeals for Veterans Claims of a *final* decision of the Board of Veterans' Appeals, a person adversely affected . . . shall file a notice of appeal with the Court within 120 days . . . ." (emphasis added)).

A. Presumption of Regularity: July 21, 2008, Letter to the Board

Mr. Fithian first argues that on July 21, 2008, he timely mailed to the Board a letter that met the requirements for a motion for reconsideration, which reset the 120-day period to file an NOA. Significantly, according to *Rosler*, as long as that motion was submitted to the Board within the 120-

day period to file an appeal to the Court, the statutory appeal period would not begin to run until the Board Chairman acted on the motion and the Board decision became final. The Secretary responds that the Board did not receive the document Mr. Fithian states he mailed on July 21, 2008, and that the presumption of regularity does not apply to the appellant's mailing of a letter to the Board, but only applies to Government actors.

The Court notes initially that "[a]lthough the presumption of regularity 'usually runs in favor of the government, it is equally applicable and appropriately applied in favor' of individuals who are litigating against the Government." *Marsh v. Nicholson,* 19 Vet.App. 381, 385 (2005) (quoting *Ala. Airlines, Inc. v. Johnson,* 8 F.3d 791, 796 (Fed. Cir. 1993)). Contrary to the Secretary's assertion, the presumption of regularity can apply to Mr. Fithian's situation.

The presumption of regularity "supports the official acts of public officers and, in the absence of *clear evidence to the contrary,* courts presume that they have properly discharged their official duties." *Ashley v. Derwinski,* 2 Vet.App. 62, 64 (1992) (quoting *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14-15 (1926)). Here, the presumption of regularity indicates that if Mr. Fithian had filed his letter with the Board, the Board, acting in its regular course of business and following its regular processes, would have placed it in his claims file and acted on it in some way.

The Secretary asserts that the Board did not receive the July 21, 2008, letter. Mr. Fithian acknowledges that he did not receive a response from the Board and so, rather than following up with the Board, he mailed a letter to the RO on September 8, 2008. The evidence he offers in support of his assertion that he mailed the July 21, 2008, letter is an affidavit that states (1) he mailed the letter first class postage prepaid; (2) he sent the letter to the Board in Washington, D.C.; and (3) he assumed it was delivered. These statements, however, are not sufficiently clear evidence to rebut the presumption of regularity. They are also not sufficient to establish the presumption of receipt under the common law mailbox rule. *See Rios v. Mansfield,* 21 Vet.App. 481, 482 (2007) (stating that the "presumption of receipt permitted under the common law mailbox rule is not invoked lightly" and "requires proof of mailing, such as an independent proof of a postmark, a dated receipt, or evidence of mailing apart from a party's own self-serving testimony"). Based on this evidence, which establishes neither that the Board received the letter nor that Mr. Fithian mailed the letter, the

Court must conclude that the Board properly discharged its duties and that Mr. Fithian's July 21, 2008, letter was not received by the Board.

B.  Misfiling a Motion for Reconsideration at the RO

Mr. Fithian next argues that on September 8, 2008, he timely mailed to the RO a letter that met the requirements for a motion for reconsideration, which delayed the start of the statutory appeal period to the Court.  The Secretary asserts that the U.S. Court of Appeals for the Federal Circuit in *Henderson* determined that filing a motion for reconsideration at the RO is not sufficient to meet the requirements of 38 C.F.R. § 20.1001(b).  The regulation states that a motion for reconsideration "must be filed at the following address: Director, Management and Administration (01E), Board of Veterans' Appeals, 810 Vermont Avenue, N.W., Washington DC 20420."  38 C.F.R. § 20.1001(b) (2010).

A review of the significant caselaw related to this issue necessarily begins in September 2002, when the Federal Circuit decided *Jaquay v. Principi* and used "equitable tolling" and "abatement" interchangeably in its analysis.  As we discussed earlier, while these concepts are similar, they are not the same.  In *Jaquay*, a veteran timely (within the 120-day statutory appeal period to the Court) filed a motion for reconsideration with the RO, which untimely forwarded it to the Board.  The Board denied the motion for reconsideration, and Mr. Jaquay filed a timely NOA with the Court.  The Federal Circuit considered the "veteran-friendly nature of the veterans' benefits system" and the "non-adversarial stage of a claim for benefits" and held that a veteran who misfiles his motion for reconsideration at the RO rather than at the Board effectively "tolls" the 120-day statute of limitations of 38 U.S.C. § 7266.  304 F.3d at 1279-80, 88-89.  While the Federal Circuit inartfully used the word "toll," the meaning of its holding is consistent with "abate."  Consequently, the Federal Circuit in *Jaquay* correctly decided that misfiling a motion for reconsideration at the RO abated the finality of a Board decision and prevented the 120-day statutory appeal period from beginning.  Significantly, when the finality of an administrative decision is abated, the impact is not to toll a statute of limitations, but rather, simply to delay the start of the statutory appeal period to the Court because, as here, the statutory appeal period does not begin until a final Agency action has occurred.

Following the Federal Circuit's decision in *Jaquay*, this Court decided *Kouvaris v. Shinseki,* 22 Vet.App. 377 (2009). Significantly, the Court recognized the "veteran-friendly nature of the veterans benefits system" and cited *Jaquay* for the determination that "strict compliance as to where within the Board, or even within VA, the motion for reconsideration must be filed is not required." 22 Vet.App. at 381. The Court further concluded that the filing of the motion for reconsideration abated the finality of the Board decision. *Id.*

The Court again cited *Jaquay* in *Boone v. Shinseki,* 22 Vet.App. 412 (2009). Mr. Boone mailed to his RO a form that the Court determined to be a motion for reconsideration. The RO instructed him to mail the form to the Court. The Court determined that the documents Mr. Boone filed with the RO met the criteria for a motion for reconsideration because, in part, it was irrelevant whether the documents were filed at the Board or the RO. The Court stated: "The Board is not an independent entity, but is part of VA and, subject to limitations expressed by statute, is under the control of the Secretary. This being the case, strict compliance as to where within VA the motion for reconsideration must be filed is not required." *Boone,* 22 Vet.App. at 414.

As these cases illustrate, despite the regulation's instruction that a motion for reconsideration "must be filed" at the Board and mailed to a specific address in Washington, D.C., this Court has adopted the Federal Circuit's view that the regulation's directive and the included address are for the administrative convenience of the Board. *Jaquay,* 304 F.3d at 1286. The jurisprudence of this Court and the Federal Circuit has consistently acknowledged VA as one entity for pleading purposes. *Id.* Therefore, a motion for reconsideration misfiled at an RO abates the finality of the original Board decision in accordance with *Rosler* as of the date of the filing at the RO. *See Jaquay,* 304 F.3d at 1289; *see also Boone,* 22 Vet.App. at 414; *Kouvaris,* 22 Vet.App. at 381.

On December 17, 2009, responding to the Supreme Court of the United States's (Supreme Court's) decision in *Bowles v. Russell, supra*, the Federal Circuit decided *Henderson*. In *Henderson*, the Federal Circuit sought to clarify its jurisprudence on equitable tolling under 38 U.S.C. § 7266(a). The Federal Circuit and this Court had applied the doctrine of equitable tolling in several cases where the equities seemed to favor the litigant rather than to require the strict enforcement of the statutory appeal period. *See Barrett v. Principi,* 363 F.3d 1316, 1321 (Fed. Cir. 2004) (holding that equitable tolling should be applied if a claimant's mental incompetency "rendered him incapable of

8

'rational thought or deliberate decision making,' or 'incapable of handling [his] own affairs or unable to function [in] society'" (citations omitted)); *Bailey v. Principi,* 351 F.3d 1381, 1382 (Fed. Cir. 2003) (holding that "the filing with the [RO] of a document that expresses the veteran's intention to appeal to the Veterans Court equitably tolls the running of the 120-day notice of appeal period"); *Bobbitt v. Principi,* 17 Vet.App. 547, 554 (2004) (holding that the "appellant's actions fall under the Federal Circuit's equitable-tolling-doctrine umbrella" where the appellant, within the 120-day statutory appeal period to the Court, completed an NOA and gave it to her representative, who sent the document to the Board and requested that the appeal be forwarded to the Court).

The Supreme Court's decision in *Bowles* required that the Federal Circuit and this Court review their application of the doctrine of equitable tolling to the statutory appeal provision found in section 7266(a). Section 7266(a) provides:

> In order to obtain review by the Court of Appeals for Veterans Claims of a final decision of the Board of Veterans' Appeals, a person adversely affected by such a decision shall file a [N]otice of [A]ppeal with the Court within 120 days after the date on which notice of the decision is mailed pursuant to section 7104(e) of this title.[3]

*Id.*

The Supreme Court in *Bowles* determined that "the timely filing of a [N]otice of [A]ppeal in a civil case is a jurisdictional requirement" and thus is mandatory; the Court also instructed that there is "no authority to create equitable exceptions to jurisdictional requirements." 551 U.S. at 214. In *Henderson*, the Federal Circuit, applying *Bowles*, expressly overruled two of its earlier decisions, *Jaquay*, *supra*, and *Bailey v. West,* 160 F.3d 1360 (Fed. Cir. 1998) (en banc), insofar as those cases attempted to apply equitable tolling to the jurisdictional statute. The Federal Circuit stated: "Today, for the reasons set forth below, based on *Bowles*, we expressly overrule *Bailey* and *Jaquay*'s holdings that the time period set forth in [section] 7266(a) is subject to equitable tolling." *Henderson,* 589 F.3d at 1203. Thus the Federal Circuit determined that a Notice of Appeal filed after the expiration of the 120-day appeal period set forth in section 7266(a) was untimely and that the Court therefore lacked jurisdiction to hear the appeal–even where, as in Mr. Henderson's case, "his failure to timely

---

[3] In pertinent part, 38 U.S.C. § 7104(e) provides: "After reaching a decision on a case, the Board shall promptly mail a copy of its written decision to the claimant at the last known address of the claimant."

appeal was a direct result of his illness" of paranoid schizophrenia–because the 120-day time period is not subject to equitable tolling. *Id.* at 1203-04.

The Federal Circuit overruled *Jaquay* in the first paragraph of its *Henderson* decision as part of a discussion of equitable tolling and Notices of Appeal, not as part of any discussion related to the location of filing a motion for reconsideration of a Board decision. Yet the Secretary argues that *Henderson* completely overruled *Jaquay*–including the Court's jurisprudence related to motions for reconsideration misfiled at an RO, which is based on *Jaquay*. If this were the case, then a motion for reconsideration filed at the RO would not be constructively filed at the Board, Mr. Fithian would not have filed a timely motion for reconsideration anywhere within VA, there would be no basis upon which the finality of Board's decision would be abated, Mr. Fithian's NOA would be untimely, and the Court would have to dismiss the appeal.

The Court rejects the Secretary's argument. *Henderson* specifically overruled only that part of *Jaquay* that had incorrectly extended equitable tolling to section 7266(a). Nothing in the *Henderson* analysis and holding disturbed the well-settled rule that a motion for reconsideration misfiled at the RO is constructively filed with the Board. *See Jacquay, Kouvaris*, and *Boone*, all *supra*.

Looking again at the specific language in *Henderson*, the Federal Circuit stated: "[W]e expressly overrule *Bailey* and *Jaquay*'s holdings that the time period set forth in [section] 7266(a) is subject to equitable tolling." 589 F.3d at 1203. The court held that "38 U.S.C. § 7266(a) is a time of review provision in a civil case and that, because Congress has not so provided, it is not subject to equitable tolling." *Id.* at 1220. The Federal Circuit then continued: "If Congress determines that the 120-day period for appealing to the Veterans Court from a decision of the Board should be subject to equitable tolling, it may amend [section] 7266(a) to compel a result different from the one we reach today." *Id.*

This very specific language in *Henderson* is significant because it is narrow, restricting the Federal Circuit's overruling of *Jaquay* to the application of equitable tolling to the statutorily provided time for appeal to the Court contained in section 7266(a). That holding provides: "[W]e expressly overrule *Bailey* and *Jaquay*'s holdings that the time period set forth in [section] 7266(a) is subject to equitable tolling." 589 F.2d at 1203.

10

Notably, *Henderson* did not disturb the Federal Circuit's previous decisions regarding VA as a veteran-friendly, unified Agency where misfiling or misdirecting an Agency pleading such as a motion for reconsideration is not fatal to a veteran's claim. Section 7266(a) is a jurisdictional statute that applies to the Court's ability to review final Agency decisions; it in no way governs motions for reconsideration before the Board, much less the location of their filing. Consequently, *Henderson*'s statement that equitable tolling was not available for section 7266(a) did not overrule the Federal Circuit's longstanding precedent and that portion of *Jaquay* that determined filing a motion for reconsideration at the RO rather than the Board was sufficient to meet the requirements of 38 C.F.R. § 20.1001.

In examining the language of *Henderson*, the Court recognizes that the Federal Circuit's opinion is not a model of clarity because it blurs the concepts of abatement and tolling. The Federal Circuit is clear, however, that the Supreme Court's *Bowles* decision is the basis for the *Henderson* outcome. In *Bowles*, the Supreme Court held: "Today we make clear that the timely filing of a notice of appeal in a civil case is a jurisdictional requirement." 551 U.S. at 214; *see also Henderson,* 589 F.3d at 1222 (Mayer, J., dissenting) (stating that "[t]he majority seizes" upon this sentence from *Bowles*). Neither *Bowles* nor *Henderson* address the issue of misfiling. The *Bowles* decision deals exclusively with a statutory deadline that controls the number of days for filing a Notice of Appeal of a district court decision. The *Bowles* decision does not relate to *where* that motion may be filed, only the *timing* of the filing at the court. Neither the Supreme Court's decision in *Bowles* nor the Federal Circuit's decision in *Henderson* disturbed a longstanding principle of veterans law jurisprudence consistently holding that filing a motion for reconsideration at the RO is constructive filing at the Board.

Because the Federal Circuit overruled *Jaquay*'s holding only as it related to equitable tolling of section 7266(a), and because *Henderson* does not address the issue of filing a motion for reconsideration at an RO, and because *Bowles* deals exclusively with the timing of a filing at a court, it is clear that the Federal Circuit in *Henderson* did not overrule *Jaquay*'s veteran-friendly determination that filing a motion for reconsideration at an RO constitutes a constructive filing of a motion for reconsideration at the Board.

11

Thus, the Court reaffirms our holding in *Kouvaris* that "[i]n light of the veteran-friendly nature of the veterans benefits system, [] strict compliance as to where within the Board, or even within VA, the motion for reconsideration must be filed is not required." 22 Vet.App. at 381; *see also Boone,* 22 Vet.App. at 414 (stating that "strict compliance as to where within VA the motion for reconsideration must be filed is not required").

This is not the first occasion since the Federal Circuit decided *Henderson* the Court has considered this issue. In *Posey v. Shinseki,* 23 Vet.App. 406 (2010), which was decided four months after *Henderson*, the Court stated that "the fact that Mr. Posey mailed [his] document to the [RO] rather than the Board is irrelevant." 23 Vet.App. at 409. The Court again cited *Jaquay*'s holding that "strict compliance as to where within VA the motion for reconsideration is filed is not required," 304 F.3d at 1287, and stated that *Henderson* overruled *Jaquay* on other grounds, *id.* at 408-09. We confirm again *Posey*'s interpretation of *Jaquay*.

Turning again to the facts of this case, Mr. Fithian mailed a letter to the Nashville, Tennessee, RO on September 8, 2008. The RO received the letter on September 12, 2008, which was within the 120-day period to file an NOA with the Court. By filing the letter with the RO, Mr. Fithian constructively filed the letter with the Board. If the letter was a motion for reconsideration, then under *Rosler* it served to abate the finality of the May 15, 2008, Board decision. As a result, if the September 12, 2008, letter is a motion for reconsideration, then there is no final Board decision that Mr. Fithian could appeal to the Court under section 7266(a) until the Board Chairman acts on the motion for reconsideration.

### C. Jurisdiction To Characterize the Letter to the RO

The Court's analysis turns next to the letter Mr. Fithian mailed to the RO on September 8, 2008. As a preliminary matter, the Court must address the Secretary's argument regarding the Court's jurisdiction to determine whether the letter was a Notice of Appeal, a motion for reconsideration, a Notice of Disagreement, or some other kind of pleading. In other words, when determining whether the Court may exercise its statutory jurisdiction to review final decisions from the Board, is the Court restricted to determining only what something is not rather than what something is? Phrased in zoological terms, may the Court determine only that what looks like a duck is not a duck, or may the Court determine that what initially looks like a duck, is, in fact, a platypus, and say so?

12

The Secretary argues that in determining whether an NOA is timely, the Court does not have jurisdiction to determine whether the letter to the RO is or is not a motion for reconsideration. The Secretary asserts that the only question before the Court is whether Mr. Fithian has filed a timely NOA, and, if there is no timely NOA, the Court does not have the jurisdiction to determine what the September 8, 2008, letter may be. Rather, the Secretary argues that "findings by the Court on any issues other than whether Appellant timely filed an appeal with the Court would be dicta." Appellee's December 10, 2009, Response at 6.

By returning the September 8, 2008, letter to Mr. Fithian and instructing him to mail it to the Court, the RO implied that it was an NOA, not a motion for reconsideration. This raises a question concerning the character of the letter. If it was a motion for reconsideration, then it was timely under *Rosler*. If it was an NOA, then it was mailed to the wrong location. *See* U.S. VET. APP. RULE 3 ("A person adversely affected by a Board of Veterans' Appeals decision may appeal that decision to the Court only by filing a written Notice of Appeal with the Clerk of the Court").

The Secretary fails to recognize that in determining whether a document is, in fact, an NOA, the Court must necessarily examine its substance and determine what it is. This Court's Rules of Practice and Procedure require that an NOA include a person's name, address, and telephone number. U.S. VET. APP. R. 3(c)(1). An NOA must also "reasonably identify the Board decision appealed from and be able to be reasonably construed, on its face or from the surrounding circumstances, as expressing an intent to seek Court review of that decision." *Id.* at (c)(2). In determining whether a document contains these elements of an NOA, the Court will necessarily identify if a document is instead a motion for reconsideration or a Notice of Disagreement. The fact that a document is identifiably a motion for reconsideration or a Notice of Disagreement, may provide essential support for the determination that it is not an NOA. In other words, determining that the creature in question is a platypus provides the necessary proof that it is not a duck, despite the initial impression created by its duck-like bill.

This Court has assessed the characterization of an ambiguous pleading on several occasions. In *Boone*, the Court determined that "Mr. Boone's submission to the RO . . . was not an NOA . . . because the document and the circumstances surrounding its filing evidenced no clear intent to seek judicial review." 22 Vet.App. at 414. In reaching this conclusion, the Court considered that Mr.

13

Boone did not file his VA Form 21-4138 (Statement in Support of Claim) with the Court, but rather sent it to the RO. *Id.* at 412, 414. The Court also noted that Mr. Boone wrote on the document that he could not "afford to hire an attorney and take this to the Court," which supported the conclusion that he was "seeking reconsideration and not appealing." *Id.* at 414.

In *Kouvaris*, the Court examined the Form 21-4138 Mr. Kouvaris filed with the Board and noted that it "lacked any indicia of intent to seek review by the Court." 22 Vet.App. at 380. The Court also noted that "[t]he document had 'Notice of Disagreement' written across the top; it not only was filed with the Board, it also expressed the explicit intent to 'file this [N]otice of [D]isagreement with the Department of Veterans Affairs Board of Veterans' Appeals.'" *Id.*

Additionally, in *Posey*, the Court pinpointed five elements of the document Mr. Posey submitted to the Court that illustrated why it evinced "no intent to seek review by the Court" but instead "suggest[ed] that it [was] more properly considered a motion for reconsideration of the Board decision." 23 Vet.App. at 408.

> First, Mr. Posey's submission contains a VA Form 1-9, entitled "Appeal to Board of Veterans' Appeals." Second, on that form, Mr. Posey checked the box labeled "I want a [Board] hearing in Washington, D.C." Third, Mr. Posey attached a letter to the Form 1-9 addressed to the VA regional office in Lakewood, Colorado (where the form and letter were received on November 8, 2007). Fourth, the salutation of Mr. Posey's letter reads: "To the Honorable Board of Veterans Affairs." Fifth, in his letter, Mr. Posey reiterates his desire "to have a video conference hearing with one of the [B]oard members in Washington, D.C." Nowhere in his letter does Mr. Posey refer to the Court or indicate that he is seeking review of the Board's decision by the Court. Rather, the Court is convinced Mr. Posey was seeking to have the Board reconsider its July 2007 decision.

*Id.* The Court went beyond a cursory examination of the letter in an attempt to discern whether the elements of an NOA were present, and instead looked at the letter as a whole to determine what it was. In *Posey*, the Court determined that the document was not an NOA, but was instead a motion for reconsideration of the Board decision.

The mechanical partitioning of analysis that the Secretary argues for is unrealistic as a matter of practice. The Court necessarily must examine the language of the document in order to determine whether it is an NOA. In conducting this examination, the Court may note an absence of language that expresses an intent to seek Court review. *See Posey*, *Kouvaris*, and *Boone*, all *supra.* The Court

14

is therefore justified in, and indeed, required to make comparisons between an NOA and a motion for reconsideration or any other pleading that could be submitted by a veteran. For example, in *Posey*, the Court stated: "[T]he document submitted to the Court is, in fact, a motion for reconsideration of the Board decision rather than a Notice of Appeal . . . ." 23 Vet.App. at 406-07.

Finally, classifying a document is essential in order to avoid inconsistent decisions that would leave the appellant in a catch-22 situation. If the Court refuses to exercise jurisdiction because it concludes that the appellant's submission is not an NOA but makes no further determination about the nature of the document, and then the Board refuses to exercise jurisdiction because it finds that the appellant's submission is not a motion for reconsideration, the appellant would be in an untenable position. The Court, therefore, does have the authority, in determining whether a timely NOA has been filed, to also determine whether a document is a motion for reconsideration. *See Butts v. Brown*, 5 Vet.App. 532, 540-41 (1993) (en banc) (Court has jurisdiction to review Board's refusal to exercise jurisdiction); *see also Hayre v. Principi,* 15 Vet.App. 48, 57 (2001) (Kramer, C.J., concurring in part and dissenting in part as to dismissal) (stating that "this Court has the responsibility to determine for itself whether it has jurisdiction to consider a claim"). That is, the Court is not limited to determining only that something that looks like a duck is not a duck, but in the exercise of its appellate review authority the Court may determine that something that initially looks like a duck is not a duck, but is rather a platypus. These determinations are not dicta, but are essential to the decision of the Court as it exercises its appellate review authority.

### D. Nature of the September 8, 2008, Letter

Pursuant to the regulation,

> a motion for reconsideration must be in writing and must include (1) the name of the veteran, (2) the applicable VA file number, and (3) the date of the Board's decision to be reconsidered. It must also set forth the alleged obvious error of fact or law in the applicable decision of the Board, or other appropriate basis for requesting reconsideration.

*Boone*, 22 Vet.App. at 414 (citing 38 C.F.R. § 20.1001(a)).

The September 8, 2008, letter clearly satisfies the first two elements because it includes Mr. Fithian's name and, in the redacted portion, his Social Security number.[4] *See Boone,* 22 Vet.App. at 414 (noting that Mr. Boone's filing included his Social Security number but not mentioning that the filing included a VA file number and stating that the filing constituted a motion for reconsideration). According to *Kouvaris*, the date of the Board decision is "apparent from the circumstances" when there is only one Board decision of record, as there is here. 22 Vet.App. at 380-81. Consequently, the third element is satisfied as well.

As for the question of whether Mr. Fithian's letter "set[s] forth clearly and specifically the alleged obvious error . . . of fact or law in the applicable decision . . . of the Board" (38 C.F.R. § 20.1001(a)), the letter states: "[P]ain in my lower left has continued to bother and hamper me." Appellant's October 31, 2008, Response at 2. He also states that he "disagree[s] with your decision on my compensation claim on my left leg and ankle." *Id.* While Mr. Fithian does not use the word "reconsider," it is clear that he is expressing disagreement with the Board's decision and alleging an error of fact regarding the continuation of pain in his lower leg.

It is also clear that Mr. Fithian's disagreement is with the Board, not the Court. His letter is not addressed to the Court, nor does it mention the Court or an intent to seek judicial review. As such, it cannot properly be construed as an NOA. *See* U.S. VET. APP. R. 3(c)(2) (stating that an NOA must express intent to seek Court review); *see also Posey,* 23 Vet.App. at 408 (stating that a document *filed with the Court* will be "liberally construed to constitute" an NOA); *Kouvaris,* 22 Vet.App. at 379 (stating that an intent to seek Court review can be "'clear from the document as a whole and the circumstances of its filing with the Court'" (quoting *Durr v. Nicholson,* 400 F.3d 1375, 1381 (Fed. Cir. 2005)). Consequently, the Court determines that the September 8, 2008, letter to the RO satisfies the requirements of § 20.1001(a).

The document Mr. Fithian timely filed at the RO, which was constructively filed at the Board, is a motion for reconsideration and not an NOA. According to *Rosler*, this timely filing abated the finality of the May 15, 2008, Board decision. Consequently there is no final Board decision until the Board Chairman acts on the motion for reconsideration. *See Rickett, supra.* Because the Court can

---

[4] On October 13, 2010, Mr. Fithian, responding to an October 12, 2010, Court order, informed the Court that the redacted portion of the September 8, 2008, letter contained his Social Security number.

16

only review final decisions of the Board, and because Mr. Fithian's letter is not an NOA but rather a motion for reconsideration, the Court will dismiss his appeal without prejudice. *See* 38 C.F.R. § 7266(a).

The Board has not yet responded to Mr. Fithian's motion for reconsideration. Therefore the motion is still pending before the Board. *See Posey, supra.* Should the Board decision, when final, be adverse to Mr. Fithian, he may appeal to the Court. *See Rosler,* 1 Vet.App. at 249.

## IV. CONCLUSION

On consideration of the foregoing, Mr. Fithian's appeal of the May 15, 2008, Board decision is DISMISSED without prejudice.